\#        **IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **CURTIS JONES,** | **CRIMINAL ACTION NO.** |
| **BOP REG # 55887-019,** | **1:14-CR-8-CAP-JSA-1** |
| **Movant,** | |
| | **CIVIL ACTION NO.** |
| **v.** | **1:17-CV-276-CAP-JSA** |
| | |
| **UNITED STATES,** | **MOTION TO VACATE** |
| **Respondent.** | **28 U.S.C. § 2255** |

**MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION**

Movant, Curtis Jones, filed a 28 U.S.C. § 2255 motion to vacate his sentence, proceeding *pro se* (Doc. 156); followed by two counseled superseding § 2255 motions (Doc. 181 (filed by appointed counsel, Giles Jones); Doc. 189 (filed by first retained counsel, Rodney Zell)); and a final explanation of Movant's claims, filed by second retained counsel, Stephen Reba, in a post-hearing brief (Doc. 207) and reply brief (Doc. 209) following the November 21, 2018 hearing on this matter (*see* Doc. 206 (Hearing Tr.)).

**IT IS RECOMMENDED** that the § 2255 motion be **DENIED**.

**I.    Background**

The government has laid out the factual and procedural background to this case in great detail on two separate occasion. (*See* Doc. 196 (Gov't 1st Resp. Br.) at

4-20; Doc. 208 (Gov't Post-Hrg. Resp. Br.) at 7-21). The Eleventh Circuit has also done so, as set forth in part below. (*See* Doc. 154 (11th Cir. opinion affirming Movant's convictions) at 2-13). Represented by Steve Sadow, Movant was convicted after a jury trial on two counts of cocaine trafficking and sentenced to 180 months in prison. At sentencing and on appeal, Movant was represented by new counsel, Adam Hames, who claimed on appeal that this Court had erred by (1) enhancing Movant's sentence based on the possession of a firearm in relation to the drug trafficking crimes and (2) admitting into evidence lay opinion testimony from law enforcement officers about the meaning of intercepted telephone calls played at Movant's trial, recordings of wiretaps obtained for the telephones of Movant and others. (*Id.* at 14, 18). The Eleventh Circuit rejected these claims. (*See id.* at 17 ("Jones's challenge to Special Agent Connolly's testimony concerning the intercepted calls, though preserved on appeal, ultimately fails. First, Special Agent Connolly did not interpret specific code words during his testimony or indicate particular calls referred to cocaine transactions. Instead, he stated as a general matter drug traffickers often use coded language in phone calls. Moreover, even if Special Agent Connolly had testified regarding the meaning of specific code words in the intercepted calls, his testimony would have been proper lay testimony under our case law." (footnote omitted))).

2

The Eleventh Circuit summarized the factual background as follows:

In early January 2013, agents from the Drug Enforcement Agency ("DEA") began a wiretap investigation of a suspected cocaine trafficker, Jonathan Crutcher. On January 15, 2013, agents intercepted a call between Crutcher and another male, later identified as Curtis Jones, in which Jones advised Crutcher he had just received some drugs. Agents intercepted another call between Crutcher and Jones on January 29, 2013, in which they arranged for a drug transaction to take place later that day. The agents established surveillance on Crutcher and observed him meeting with Jones in a convenience-store-parking lot. After he met with Crutcher, the agents followed Jones to a residence located at 3964 Stonewall Tell Road in Atlanta, Georgia, and observed a number of vehicles coming and going from that residence over the course of the afternoon, including Crutcher's vehicle and a red Dodge Ram.

Based on several intercepted calls between Jones and Crutcher during that time period, the agents learned Crutcher had turned over a large sum of money to Jones. In turn, Jones provided the drug proceeds to his source of supply, whom agents believed was driving the Dodge Ram. When the Dodge Ram left the Stonewall Tell Road residence, agents directed a local police officer to conduct a traffic stop of the vehicle. Three large bags of money were recovered from the vehicle, containing $614,811 in cash. The following day, January 30, 2013, agents intercepted a call between Jones and Crutcher in which Crutcher asked Jones for another four or five kilograms of cocaine. *Following that call, the agents sought and obtained a wiretap for Jones's phone.*

On February 16, 2013, agents intercepted a call between Jones and an unidentified male, in which they discussed a future drug transaction. Two days later, on February 18, 2013, agents intercepted several calls between Jones and a person identified as "Dee," which led them to believe the planned drug transaction would take place that day. The agents established surveillance on Jones at 2170 High View Road in Atlanta. Agents observed a number of vehicles coming and going from the High View Road residence, including a blue Chrysler Pacifica and

3

a gray Nissan Maxima. When the Pacifica left the High View Road residence, the agents directed local law-enforcement officers to conduct a traffic stop of the vehicle. The officers recovered a one-kilogram package of powder cocaine and a bag containing crack cocaine in the backseat of the vehicle. The agents likewise directed local law enforcement to conduct a traffic stop of the Maxima, when it left the High View Road residence. The officers recovered two kilograms of cocaine under the hood of the vehicle and eight kilograms of cocaine from trap compartments under the floorboards.

Following the conclusion of the wiretap investigation, DEA agents conducted a "takedown," in which they simultaneously arrested the various individuals involved in the investigation. R. at 1038. The takedown took place on January 15, 2014; DEA Special Agent Michael Connolly, the co-case agent for the investigation, was assigned arresting Jones. Special Agent Connolly arrested Jones at a Hampton Inn in East Point, Georgia. He subsequently took Jones to 515 Platoro Court, Jones's residence, because Special Agent Connolly had a seizure warrant for Jones's BMW, which was located at that address. When they arrived at Platoro Court, Special Agent Connolly advised Jones of his *Miranda* rights.

Jones waived his rights and gave Special Agent Connolly consent to search his Platoro Court residence. In the family room of the residence, the agents found a home-security- system monitor, a loaded firearm, and extra magazine under the couch cushions. In one of the kitchen cabinets, the agents found a money counter. They also recovered a number of plastic baggies from the residence. In the master bedroom, agents found another security-system monitor, a collection of watches, and a collection of sneakers that Jones stated was worth approximately $10,000.

Jones told Special Agent Connolly he lived at Platoro Court, and a barber and his son also had stayed there. When asked whether there were any firearms in the house, Jones stated the barber may have left a gun in the house. *When Special Agent Connolly asked Jones about his involvement in narcotics trafficking, Jones admitted he was a*

4

*marijuana trafficker. Jones initially denied any involvement in cocaine trafficking but later stated he could get five to ten kilograms of cocaine from "the Mexicans." R. at 1064.*

Special Agent Connolly asked Jones about a house located at 1980 Childress Drive, which Jones had stated he owned. Special Agent Connolly requested permission to search that residence; Jones gave his consent. After the search at Plataro Court concluded, Special Agent Connolly drove Jones to the Childress Drive residence. On the ride there, Special Agent Connolly asked Jones whether he had a large stash of money somewhere; Jones admitted there was approximately $250,000 in the trunk of his BMW. Agents later searched the BMW and found three bags in the trunk of the car containing a total of $274,668 in cash.

At Childress Drive, Special Agent Connolly observed a security system monitor in the living room of the residence. In the kitchen, agents discovered marijuana in the oven and in a hidden compartment behind the kick plate on the cabinets. They also found a scale in one of the cabinets and a firearm on top of one of the cabinets. In a kitchen drawer, Special Agent Connolly found a money ledger of the type commonly seen in drug-trafficking cases.

(Doc. 154 at 2-6 (emphasis added; footnote omitted)).

## II.   The § 2255 Motions

In his original, *pro se* § 2255 motion, Movant raised eight claims of ineffective assistance of trial counsel, for failing to do the following:

1. conduct any pre-trial investigation;
2. move to suppress the wiretaps because the tapes were not sealed per the requirements of 18 U.S.C. § 2518(8)(a) and allow Movant an opportunity to review the tapes;
3. interview, subpoena, and call material witnesses;
4. investigate the statement given by Sheneka Smith;

5

5. object to the wiretaps being played in open court;
6. properly advise Movant regarding his right to testify;
7. inform Movant of any government plea offer or seek plea negotiations;
8. fully advise Movant of the strength of the government case, the application of the sentencing guidelines should he be convicted, and the benefits of a guilty plea.

(Doc. 156-1 at 6-18). Movant also raised a claim of ineffective assistance of sentencing counsel. (*Id.* at 16).

The Court determined, based on the Government's response, that an evidentiary hearing was required on certain issues and appointed counsel, Giles Jones, for Movant on March 10, 2017. [165]. The Court originally set an evidentiary hearing for May 9, 2017. [166]. The date for this hearing was re-set four separate times between May 9, 2017 and February 21, 2018, at Movant's request. [168, 174, 177, 179]. In the meantime, because there was obvious confusion as to what issues Movant was still asserting, and the Government requested clarity in this regard, the Court also ordered Movant to file, with the benefit of counsel, an amended § 2255 Motion that properly identified the issues currently being pursued, by January 22, 2018. [179].

Attorney Jones thus filed an amended § 2255 motion. [181]. Jones concentrated on the eighth claim, arguing that Movant most likely would have pled guilty had trial counsel properly informed him of the strength of the government's

case and the benefits of pleading guilty:

> [Movant] would show that if [] Sadow had met with him more than three times, [he] might not have gone to trial. If [] Sadow had reviewed with [him] the discovery and evidence, [he] would not have gone to trial. Had [] Sadow discussed with [him] the federal statutes and the sentencing guidelines and what [would happen were he to be] found guilty at trial, [he] more [likely than] not [would not have gone] to trial.

(*Id.* at 15).

However, by the time Attorney Jones filed the amended motion, the relationship between him and Movant had broken down, and he indicated that Movant would be hiring new counsel. Thus, Attorney Jones explained that while his January 22, 2018 filing was his best effort to comply with the Court's deadline, he acknowledged that his client, who had become dissatisfied with Jones's efforts, had not specifically reviewed or "approved" it.

At a status hearing on January 31, 2018 [182], Movant confirmed dissatisfaction with Mr. Giles Jones's services and announced that he (Movant) would be replacing Mr. Jones with retained counsel of his own choice. Although the hearing had already been re-set four separate times, the Court agreed to allow this belated change of counsel, continued the February 21, 2018 evidentiary hearing, continued Movant's deadline to file a complete amended petition to March 16, 2018, and set a further status conference for March 22, 2018. [*Id.*]. The next day, February

7

1, 2018, Attorney Rodney Zell filed a Consent to Substitution of Counsel, thereby formally replacing Giles Jones as Movant's attorney of record in the case. [183]. After a status conference with new counsel, the Court subsequently continued the deadlines yet again, allowing Movant to file an amended § 2255 motion by April 6, 2018. [188].

Mr. Zell then filed an amended Motion under 28 U.S.C. § 2255 on April 6, 2018 [189], raising the following claims:

1. trial counsel provided ineffective assistance by his "failure to discover a violation [of] 18 U.S.C. § 2518(8)(a) and subsequently move to suppress the wiretap cell phone calls played at trial based on [that] violation";

2. "the Government [failed] to disclose the order to seal the wiretap audio pursuant to 18 U.S.C. § 2518(8)(a)," in violation of Movant's due process rights;

3. trial counsel was ineffective for his "failure to properly advise [Movant] regarding the strengths of the Government's case and the lack of a cognizable defense."

(*Id.* at 1-2).

However, shortly afterwards, Mr. Zell filed a supporting brief stating that Movant "is proceeding only on ground three of his superseding motion." (Doc. 192 at 1). Zell argued:

It is clear from trial counsel's numerous and continuous objections at trial that he was unaware that the Government would present the testimony interpreting the language of the intercepted conversations as

8

drug trafficking communications. Logically what follows is that trial counsel would advise [Movant] of this as well. If trial counsel was as surprised and unaware of this evidence then there can be no doubt that [Movant] would be likewise as surprised and unaware as trial counsel.

This is exactly what [Movant] swore in his affidavit. [Movant] and trial counsel discussed the evidence trial counsel expected the Government to present. Trial counsel informed [Movant] that since no drugs were found in [Movant's] possession and without a witness to testify that the intercepted conversations involved drug trafficking, the Government did not have a strong case. [Movant] relied on the advi[c]e of his counsel and elected to exercise his constitutional right to go to trial. Had he been advised by his counsel that DEA agents would testify and claim that the intercepted conversations involved drug trafficking, he would have pled guilty to obtain acceptance of responsibility.

Pretermitting this Court's assessment of [Movant's] credibility, a review of the appeal makes clear that trial counsel did not believe this evidence would be presented, which would make [Movant] just as unaware. [Movant] believes that the appeal and the trial transcript speak for themselves and show that trial counsel was deficient under *Strickland* for believing that the Government would not have any of this evidence.

(*Id.* at 3-4 (footnote omitted)). "The only real question [then] is whether this Court believes [Movant] would have pled guilty had he known that the Government could present the testimony in question." (*Id.* at 5).

On July 30, 2018, the Court received a letter, *pro se*, from Movant, indicating that he disagreed with Mr. Zell as to what issues should be raised in his § 2255 case and stating that he objected, in particular, to abandoning any challenge to trial counsel's failure to move to suppress the wiretaps. [197]. The Court subsequently

9

held a hearing on September 6, 2018, which included a lengthy *in camera* discussion with Movant and his counsel, during which Movant requested that the Court appoint new counsel for him. The Court denied the request to appoint new counsel again, at that late stage of the proceeding, after the evidentiary hearing already had been continued five times and after Movant already had replaced his previously appointed counsel with retained counsel. [198].

The Court set the evidentiary hearing for November 14, 2018. [*Id.*]. Movant subsequently filed *pro se* motions to amend/supplement his § 2255 motion [199] and for appointment of new counsel [200], which the Court again denied, by Order on September 19, 2018 [201]. The undersigned, among other reasons expressed in the Order, denied the *pro se* request to amend the § 2255 Motion because Movant was represented by counsel and was therefore not allowed to file motions *pro se*. [201].

After the five prior continuances and one final, brief delay, the hearing took place on November 21, 2018. [202]. Mr. Zell's questioning focused on the legal issues presented in the § 2255 briefing, specifically as to trial counsel's advice as to the risks of trial and benefits of considering a guilty plea. However, although not specifically asserted among the issues presented in the pre-hearing briefing, the Court permitted additional questions of trial counsel as to the concerns that Defendant had expressed *pro se*. Specifically, the Court permitted testimony as to

10

trial counsel's review and analysis of the wiretap paperwork and tactical decisions regarding whether to file any motions to suppress the wiretap evidence. (*See* Evid. Hrg. Tr. [206] at 6-7).

After the hearing, Movant replaced Mr. Zell with another retained attorney, Stephen Reba. Mr. Reba filed a post-hearing brief in which he acknowledged that due to Mr. Zell's abandonment of Movant's claims regarding the wiretaps, "the only claim presently before the Court" is the claim that Movant received ineffective assistance of counsel with respect to plea negotiations. (Doc. 207 at 15). While Mr. Reba has offered no argument in support of this claim, he argues in Movant's post-hearing brief that the undersigned erred in not allowing Movant to explore his wiretap claims before the November 2018 hearing, with the help of new counsel to replace Mr. Zell and his "abandonment brief." (*Id.* at 10-14). Mr. Reba asks the Court to allow Movant "to amend his motion and that the evidentiary hearing be held again—for the first time." (*Id.* at 14).

In his post-hearing reply brief, Mr. Reba again asks the Court to allow Movant to amend his § 2255 motion "one final time and set the matter for a final hearing." (Doc. 209 at 2). He argues:

> As previously asserted, [Movant] is, and has been, exclusively interested in the lawfulness of the intercepted calls. While the Government, and this Court in its order challenged by [Movant] (Doc.

201), asserts that the failure of previous counsel to pursue this was strategic, this is simply unsupported by the facts. (Hr'g T. 80 (Sadow testifying he cannot remember if he showed [Movant] the documents surrounding the intercepted calls)). Although former counsel Zell has stated that he reviewed these documents with [Movant], [Movant] is adamant this did not happen—and it is hard to see how it could [have], since there are no warrants or documents at all relating to the intercepted calls in the large case file, passed from Mr. Zell to undersigned counsel.

While there is little question that a lawyer is required to exercise his or her professional judgment in assessing and raising claims, it is equally true that a lawyer is a mouthpiece for his or her client. Given that no lawyer seems to have reviewed or presented [Movant] with the documents he is so interested in, this Court erred in presuming this was the case. (Doc. 201).

(*Id.*).

## III.   <u>**Standard of Review**</u>

A federal prisoner may file a motion to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). But it is well-settled that "to obtain collateral relief, a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).

The Supreme Court set forth the standard for evaluating claims of ineffective

assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984); *see Dell v. United States*, 710 F.3d 1267, 1272 (11th Cir. 2013) (applying *Strickland* standard of review to ineffective-assistance-of-counsel claim raised in § 2255 motion). "An ineffectiveness claim . . . is an attack on the fundamental fairness of the proceeding whose result is challenged." *Strickland*, 466 U.S. at 697. The analysis involves two components, but a court need not address both if the petitioner "makes an insufficient showing on one." *Id.*

First, a federal court determines "whether, in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. The court "must be highly deferential" in scrutinizing counsel's performance and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. In other words, the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (Internal quotations omitted). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion — though the presumption is not insurmountable — is a heavy one." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (*en banc*). Second, a federal court determines whether counsel's challenged acts or omissions prejudiced the petitioner, i.e.,

whether "there is a reasonable probability" — one "sufficient to undermine confidence in the outcome" — that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

> To prevail on a claim of ineffective assistance, a defendant must establish two things: (1) "counsel's performance was deficient," meaning it "fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." *Strickland*[], 466 U.S. [at] 687-88 []. To satisfy the deficient-performance prong, the defendant must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment. *Id.* at 687. The defendant must rebut the strong presumption that his counsel's conduct fell within the range of reasonable professional assistance. *Id.* at 689.

*Connolly v. United States*, 568 Fed. Appx. 770, 770-71 (11th Cir. 2014).

## IV.  <u>Plea Negotiations</u>

The government first asserts that in its original, pre-hearing response to Movant's *pro se* § 2255 motion (Doc. 196), it thoroughly refuted Movant's claim that trial counsel provided ineffective assistance during plea negotiations -- and it stands by that refutation because Movant has added nothing new in his post-hearing pleadings. (Doc. 208 at 22). The government notes that in its initial response brief, it explained the law on the issue of ineffective assistance of counsel when a plea offer is rejected or lapses, which requires that the Movant asserting the claim

> must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would

14

have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler v. Cooper*, 566 U.S. 156, 132 S. Ct. 1376, 1385 (2012); *Missouri v. Frye*, 566 U.S. 134, 132 S. Ct. 1399, 1409 (2012) (defendants must demonstrate a reasonable probability that but for counsel's ineffective assistance, they would have accepted the earlier plea offer, the plea would have been entered without the prosecution canceling it or the court refusing to accept it, and the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time).

(*Id.* at 23).

The government argues that Sadow's testimony at the November 2018 hearing belies Movant's claim that Sadow failed "to properly advise [Movant] regarding the strengths of the Government's case [before Movant rejected] the Government's plea offer." (*Id.*; *see id.* at 23-24 (citing multiple instances from the November 2018 hearing transcript (Doc. 206) when "attorney Sadow testif[ied] about the conversations he had with [Movant] regarding: the 'strength' of the government's evidence; the nature of the evidence against [Movant] including seized narcotics and the wiretap recordings; any available trial defenses; plea negotiations with the Government, including the specific number of years offered by the

15

Government; the risks versus reward in going to trial; the possibility of [Movant's] cooperation with the Government and a resulting decrease in his sentence; possible cooperating witnesses; and attorney Sadow testifying about his wish that [Movant] had pleaded guilty instead of rejecting the negotiated plea offer and insisting upon a '5-year deal' not offered by the Government")). "Tellingly, [Mr. Reba] does not appear to continue to press the argument that Sadow was ineffective during plea negotiations, as he offers no response to this testimony. Accordingly, Movant has failed to even argue, much less demonstrate, prior counsel's incompetence." (*Id.* at 24 (citation omitted) (citing Doc. 207 at 15)).

### A. Counsel's Performance Was Not Deficient

#### 1. The Plea Offer

At his sentencing hearing, Movant told the District Judge: "I never was offered a plea, I never was offered a plea." (Doc. 146 (Sentencing Hrg. Tr.) at 30). But the testimony, all credible, offered at the November 2018 hearing shows otherwise. Sadow testified: "And while I wasn't given a guarantee, I brought back to [Movant] that we had a shot at [a] seven[-year sentence]. I felt pretty good about eight. He wanted five and wouldn't take anything but five, and I thought on a couple of occasions we almost had it but never got there." (Doc. 206 at 20; *see id.* at 34-44 (Sadow's testimony about plea negotiations and the email exchanges between

16

himself and the prosecutor regarding a possible plea deal); *id.* at 53-54 (Sadow's testimony noting that Movant wanted a "guaranteed five-year deal," which the government was not willing to offer due to the amount of cocaine seized in connection with the case); *id.* at 134-42 (testimony of Agent Connolly regarding the attempts to get Movant to cooperate in exchange for a lighter sentence)). Sadow testified that the only reason the government was willing to offer Movant a sentence that was under the mandatory minimum of ten years was in exchange for Movant providing the name of his source for the cocaine he was selling. (*Id.* at 19-20). And the prosecutor noted at sentencing: "I had I think two separate meetings with [Movant], his charges were made clear to him and an offer of a plea was made to him and offer for cooperation was made to him, all of this occurring before trial." (Doc. 146 at 33).

Sadow also testified at the November 2018 hearing that "the one thing that I wish is he would have taken a plea. I just say that for the record because I thought we had gotten to the point where it was in his best interest, but once he said no to anything other than a five-year guarantee, I had no choice [but to try the case]." (Doc. 206 at 23; *see id.* at 55-56, 60 (Sadow's testimony repeatedly denying that he ever advised Movant to reject the government's plea offer)). When Zell asked Sadow

17

if he discussed with Movant "some of the consequences that can occur from going to trial instead of pleading guilty," such as the loss of the sentencing reduction for acceptance of responsibility, an increase in the quantity of cocaine attributable to Movant for sentencing purposes, an upward departure because of the firearm, and so forth, Sadow responded, "Absolutely." (*Id.* at 29). Sadow "specifically explained to Movant the consequences of going to trial," including the fact that "there was no way if he goes to trial and loses he gets less than [the mandatory minimum of] ten" years' imprisonment. (*Id.*). Indeed, because of the strength of the government's case — based on "the combination of wiretaps, surveillance and seizures including money" — Sadow proposed a "reverse proffer," which involved a presentation to Movant of "the government's side of the case," to impress upon Movant the wisdom of accepting a plea deal.[1] (*Id.* at 31). Sadow offered the following testimony during the government's questioning of him at the November 2018 hearing:

> And, in fact, did you advise [Movant] that he should strongly consider entering a guilty plea in this case?

> I advised [Movant] that it was in his absolute best interest to enter a guilty plea and cooperate under the terms that I had been able to negotiate which at least according to what I understood at the time had

---

[1] Normally, in connection with a possible plea deal, a defendant makes a proffer of the evidence he can provide to the government in exchange for a lesser sentence. A "reverse proffer" involves the government providing a defendant with (some of) the evidence that it would be able to use against him at trial.

never happened before.

It's a pretty special deal?

There[ have] been better since then, but yes.

(Doc. 206 at 69).

## 2. The Wiretap Evidence

Movant also stated at sentencing that "no wiretap was ever brought up" during the pretrial proceedings (Doc. 146 at 31, 32), and he restated that claim at the November 2018 hearing (Doc. 206 at 86 (Sadow "never spoke to me about wiretaps"); *but see id.* at 117 (Movant testifying that he remembers the government "playing some calls . . . from Jonathan Crutcher")). The prosecutor noted at sentencing: "The wire taps were not litigated; however, everything in conjunction with the wiretaps was provided at the very beginning of the case in discovery, the recordings." (Doc. 146 at 33).[2] Sadow testified at the November 2018 hearing that he discussed the wiretaps with Movant and "told him [] that what we would have to do is somehow put doubt in the minds of the jurors that it was him on the calls." (Doc. 206 at 34). The defense "was not unprepared for the use of the recorded phone

---

[2] The government also has provided, as exhibits to the November 2018 hearing testimony, the orders sealing the wiretaps on several telephones relevant to this case, including two belonging to Movant. (See Doc. 206 at 151 (referring to Gov't Exs. 22 & 23)).

19

conversations as evidence against [Movant] at trial." (*Id.*; *see id.* at 59-60 (the defense was prepared for the government's use of the wiretaps at trial and for its argument that the voice on some of the intercepted calls was Movant's); *id.* at 71 (Sadow "never told [Movant the wiretaps] wouldn't be [introduced into evidence], and [he had] no reason to think [Movant] wasn't aware that they would be")). Indeed, Movant acknowledged at the November 2018 hearing that he "heard the wiretaps" "when they tried to get me to do the proffer" during plea negotiations. (Doc. 206 at 88).

In short, all of the credible testimony, and even Movant's own self-contradictory testimony, to a degree, indicates that the government offered Movant a plea deal; that his trial counsel, Steve Sadow, strongly encouraged Movant to accept the government's plea offer; but that Movant insisted on a five-year guaranteed deal, which the government was not willing to offer. For that reason, despite the strength of the government's case — of which Movant was well aware, including the wiretap evidence capturing his voice discussing drug trafficking deals — Movant rejected the government's plea offer and chose to proceed to trial. He cannot attribute that choice to trial counsel's allegedly deficient performance.

## B. No Prejudice to Movant from Counsel's Performance

The government argues that Movant not only has not established counsel's

deficient performance, but he also has not demonstrated prejudice, which would require him to show that, but for counsel's allegedly deficient performance, he would have pled guilty rather than proceed to trial. (Doc. 208 at 25).

> To show prejudice in the plea context, the defendant must show that, but for counsel's ineffective advice, there is a reasonable probability that: (1) he would have accepted the plea offer; (2) the prosecution would not have withdrawn it due to any intervening circumstances; (3) the court would have accepted its terms; and (4) the conviction or sentence, or both, would have been less severe than that actually imposed. *Lafler*, 566 U.S. at 164, 132 S. Ct. at 1385.
>
> To satisfy the first prong of this test, the defendant must allege that he would have accepted the plea offer absent counsel's deficient performance. *See Rosin v. United States*, 786 F.3d 873, 878 (11th Cir. 2015). However, the movant's "own conclusory after-the-fact-assertion" that he would have accepted a guilty plea, without more, is insufficient to demonstrate an entitlement to relief. *See id.* at 879; *see also Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991) ("Given appellant's awareness of the plea offer, his after the fact testimony concerning his desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer."). This is particularly so where the defendant consistently professed his innocence both before and after trial. *Osley v. United States*, 751 F.3d 1214, 1225 (11th Cir. 2014) ("Osley's insistence on his innocence, both before and after trial, makes it more difficult to accept his claim that he would have taken a fifteen-year plea deal."); *see also Rosin*, 786 F.3d at 878-79 (finding defendant failed to sufficiently allege prejudice where the record showed he had consistently maintained his innocence and refused to accept responsibility).

*Teers v. United States*, 739 Fed. Appx. 960, 965-66 (11th Cir. 2018) (citation altered); *see also Cox v. United States*, 2:05-CR-2-WCO-JCF-1, 2015 U.S. Dist.

LEXIS 193502, at *15-16 (N.D. Ga. Sept. 25, 2015) ("Movant has failed to show that he was prejudiced by counsel's performance with respect to plea negotiations, as he must do to sustain a claim of ineffective assistance of counsel, *see Strickland*, 466 U.S. at 694, because all of the evidence before the Court indicates that Movant, who has maintained his innocence throughout, would not have accepted a plea deal on terms the government was willing to offer."), *adopted by* 2016 U.S. Dist. LEXIS 194840 (N.D. Ga. Jan. 28, 2016).

The undersigned agrees with the government's apparently uncontested position regarding possible prejudice arising from Sadow's advice to Movant during plea negotiations. Movant has always insisted that he is innocent of trafficking in cocaine, being instead only a marijuana dealer. (*See* Doc. 146 at 30 ("I want to admit my guilt that I am a marijuana dealer, I wasn't a cocaine dealer, and I don't think I should get charged for cocaine, it should be marijuana.")). When questioned about this at the November 2018 hearing, Movant did not recall the statement that he made at sentencing: "I sold marijuana, I never said, I never said I didn't do nothing else illegal [sic]." (Doc. 206 at 111-12). But in fact Movant *did* tell the Court that he was only a marijuana dealer, insisting on his innocence of the cocaine trafficking counts even at his sentencing on those counts. His denial that he made that statement strongly undermines his credibility in these proceedings.

Movant also testified at the November 2018 hearing that had he heard phone conversations between himself and Lester, his co-defendant, who had already pled guilty, "of course I would [have taken] a plea." (*Id.* at 103). But, again, his credibility in these matters is suspect, especially so because he also testified, immediately thereafter, that "I ain't going to say I would have told Steve [Sadow] I'll take a plea, but I'm not going to sit up here and tell you that I would have said yeah, I'm going to cooperate with the government." (*Id.*). Although this testimony is confusing, Movant seems to be speaking out of both sides of his mouth here.

In sum, Movant cannot show that he was prejudiced by counsel's performance with respect to the plea negotiations because in order to so, he must show that he was willing to accept a plea deal that the government actually offered, and here it is apparent that he was not willing to do so. Movant's ineffective assistance of counsel claim with respect to plea negotiations fails.

## V.      The Wiretap Applications

As noted above, Movant asks for a chance to examine the wiretap applications and supporting affidavits in hopes of amending his § 2255 motion to raise claims challenging the propriety of the wiretaps and then proceeding to another hearing on those claims. (Docs. 207, 209). In a motion that Movant filed *pro se* on September 12, 2018, while still represented by Mr. Zell, he asked the Court to allow him to

amend his § 2255 motion to challenge the wiretap evidence because (1) the wiretap applications and the order approving them were not provided to Movant at least 10 days before his trial, in violation of 18 U.S.C. § 2518(9); and (2) Sadow never challenged the wiretap applications to force the government to show that all procedural and substantive requirements of § 2518 had been satisfied. (Doc. 199). The undersigned denied the motion "[b]ecause Movant still has counsel of record, [and thus] his *pro se* motion to amend/supplement his § 2255 motion (Doc. 199) is not properly before the Court . . . ." (Doc. 201 at 3).

The government characterizes Movant's renewed request for another evidentiary hearing as based on his contention that Mr. Zell provided ineffective assistance with respect to the November 2018 hearing. (Doc. 208 at 25). The government argues that under controlling Supreme Court precedent, the Constitution does not entitle a § 2255 movant to counsel at all, so that a claim of ineffective assistance with respect to § 2255 proceedings is a non-starter. (*Id.*). The government nevertheless notes that

> the issue of attorney Sadow's consideration of whether to pursue litigation regarding the lawfulness of the intercepted telephone calls and the supporting paperwork was actually already addressed during the course of the November 21, 2018, hearing. (Doc. 206 at pp. 6-7). Specifically, attorney Sadow testified that he reviewed all of the relevant documentation and that in his opinion, he did not find any issues that would merit a suppression motion. (Doc. 206 at 7).

24

> Accordingly, even if the Court were inclined to allow Jones to further amend his 2255 petition to include supplemental arguments regarding the lawfulness of the intercepted telephone calls, those supplemental arguments would be unavailing.

(*Id.* at 26).

Movant, through counsel, responds that this Court need not view his request for leave to amend his § 2255 motion and for a final hearing as based on Mr. Zell's possible ineffective assistance, but may view it rather as his final request to pursue "the lawfulness [or not] of the intercepted calls." (Doc. 209 at 1-2 (noting that Sadow testified that he could not remember whether or not he showed Movant the documents at issue)).

Movant's argument fails both procedurally and substantively. The Court held an evidentiary hearing, after no less than five continuances, on the issues properly alleged in the operable amended § 2255 motion and subsequent briefing, as presented through counsel. To the extent Movant comes to the Court after the hearing, after the final deadline that the Court had set for filing an amended § 2255 motion — also after multiple continuances — and after nearly two years of delay in this case, to request that the hearing be re-opened and that new issues be litigated, the Court denies this request as untimely.

To the extent Movant asks the Court to re-visit its refusal (in its September

19, 2018 Order [201]) to allow Movant to file a *pro se* amended motion, that request is also procedurally meritless. First, no appeal was taken from that Order to the District Judge and therefore all challenges to that Order have long since been waived. *See* Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in the order not timely objected to."); Fed. R. Crim. P. 59(a) ("Failure to object in accordance with this rule waives a party's right to review."); *United States v. Hayes*, 348 Fed. Appx. 528, 530 (11th Cir. 2009) (unpublished) (challenge to Magistrate Judge's order was waived where Defendant did not timely appeal to the District Judge pursuant to Rule 59(a)). Second, the Order was properly and correctly issued. Where a party is represented by counsel, that party "may not thereafter appear or act in the party's own behalf." LCrR 57.1(D)(3), NDGa. Movant was represented by Mr. Zell when he purported to file his *pro se* motion to amend, and he did not terminate Mr. Zell's representation until after the evidentiary hearing. Therefore, the Court properly denied the motion to amend [199] as not properly before the Court.[3]

---

[3] To the extent that Movant now suggests that the Court's September 19, 2018 Order denied him appointed counsel (*see* Doc. 207 at 12-15), that suggestion is meritless. The Court had initially provided Movant with appointed counsel, Giles Jones. It was Movant who chose to terminate him in favor of **retained** counsel Zell. Movant therefore was asking the Court in September 2018 to provide him a third § 2255 lawyer, at taxpayer expense, when he (Movant) already had a lawyer, who he had retained. The Court found in these circumstances that Movant had not demonstrated

More substantively, the record adduced at the evidentiary hearing contradicts Movant's speculation as to a possible claim based on Sadow's failure to move to suppress the wiretaps. The Court allowed questions on this subject, despite it being abandoned in Movant's pre-hearing brief. Sadow specifically testified that he received the wiretap documents, reviewed them, and concluded that there were no deficiencies or other viable legal challenges to raise, and he also explained that in his expert legal opinion, in any event, wiretap suppression challenges in this Circuit are very unlikely to prevail. (*See* Doc. 206 at 6-7, 78-80). Counsel therefore made a quintessential tactical decision not to raise such a fruitless challenge.

Movant claimed that Sadow never shared the wiretap paperwork within him. Sadow had no specific recollection as to whether he did or did not do so in this case. But he explained, with reference to his normal course of conduct and procedures, that he likely did share all of the discovery with Movant. (*See* Doc. 206 at 6-7, 78-80). And even so, the failure to share copies of the wiretap paperwork with Movant is not grounds to find Sadow ineffective. *See, e.g., White v. Cason*, 04-CV-75071,

---

the need for appointed counsel (since he had counsel) and that, moreover, Movant's disagreement with his retained lawyer's professional judgment about what claims were viable to assert was not grounds to offer him another lawyer at taxpayer expense. Indeed, Movant's repeated dissatisfaction with his lawyers, including prior appointed counsel, suggested that appointment of new counsel would have been futile.

2006 U.S. Dist. LEXIS 103090, at *25-26 (E.D. Mich. Feb. 21) (counsel not ineffective; criminal defense attorney has no duty to share discovery documents with client), *adopted by* 2006 U.S. Dist. LEXIS 12715 (E.D. Mich. Mar. 24, 2006); *Ramsden v. Warden, Dept. of Corrs.*, 02-138-B-S, 2003 U.S. Dist. LEXIS 2377, at *28-29 (D. Me. Feb. 14) (holding that counsel was not ineffective, stating: "I could find no case that stood for the proposition that, in order to deliver constitutionally adequate representation, an attorney must provide his client in every case with hard copies of the discovery documents and investigative reports."), *adopted by* 2003 U.S. Dist. LEXIS 7101 (D. Me. Apr. 24, 2003); *Carillo v. United States*, 995 F. Supp. 587, 591 (D.V.I.1998) ("[T]here is no constitutional duty to share discovery documents with petitioner. Petitioner cites no case law for this proposition, and this court finds none.").

Movant's claim now boils down to the notion that he would like to "see the applications and warrants underlying [the] wiretaps" for himself, to second-guess whether Sadow should have made more motions in the criminal case and/or whether his § 2255 lawyers should have asserted wiretap claims. (Post-Hearing Br. [207] at 15). On its face, what Movant demands is a fishing expedition. Even if his requests to amend and to re-open his § 2255 motion and hearing were not procedurally

barred—which they are—he continues to show no grounds for any relief.[4]

## VI.   Certificate of Appealability

A § 2255 movant must obtain a certificate of appealability ("COA") before appealing the denial of a motion to vacate. 28 U.S.C. § 2255(d); 28 U.S.C. § 2253(c)(1)(B). A COA may issue only when the movant makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the [motion to vacate] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations omitted).

---

[4] Movant has not made the showing necessary to warrant discovery in this proceeding, which may not proceed on mere speculation. "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rather, a district court in an action brought under § 2255 has discretion to authorize discovery for "good cause" shown. Rules Governing § 2255 Cases 6(a). Under Rule 6(a)'s good cause standard, a district court should permit discovery "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908–09. But "good cause for discovery cannot arise from mere speculation." *Arthur v. Allen*, 459 F.3d 1310, 1311 (11th Cir. 2006); *see also Borden v. Allen*, 646 F.3d 785, 810, n.31 (11th Cir. 2011) ("Inherent in the fact pleading requirement of the federal habeas rules is the notion that a habeas case is not a vehicle for a so-called fishing expedition via discovery, an effort to find evidence to support a claim.") Here, Movant has alleged no facts or other reasons to believe that access to these documents now would supply him with a basis to show ineffectiveness.

A movant need not "show he will ultimately succeed on appeal" because "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir.) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 337, 342 (2003)). Although Slack involved an appeal from the denial of a 28 U.S.C. § 2254 petition, the same standard applies here. *See Jones v. United States*, 224 F.3d 1251, 1254 (11th Cir. 2000) (applying Slack standard in § 2255 case). Because there is no reasonable argument that Movant's sole remaining ground for relief has merit, a COA should not issue in this matter.

## VII.  Conclusion

**IT IS RECOMMENDED** that Movant's 28 U.S.C. § 2255 motion, as amended, be **DENIED**; that Movant's request to amend his § 2255 motion again and for another hearing be **DENIED**; and that Movant be **DENIED** a certificate of appealability.

The Clerk is **DIRECTED** to withdraw the reference to the Magistrate Judge.

**SO RECOMMENDED** this 13th day of May, 2019.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

30