UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CURTIS JONES,<br>BOP REG # 55887-019<br>   Movant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>   Respondent. | CRIMINAL ACTION NO.<br>1:14-CR-0008-1-CAP<br><br>CIVIL ACTION NO.<br>1:17-CV-0276-CAP |

**O R D E R**

This action is before the court on the magistrate judge's report and recommendation ("R&R") [Doc. No. 210]. The movant has filed objections thereto [Doc. No. 212].

**I. Standard of Review**

In reviewing a magistrate judge's R&R, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to.

Frivolous, conclusive, or general objections need not be considered by the district court." *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)) (internal quotation marks omitted). The district judge must "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990) (citation and internal quotation marks omitted). Absent objection, the district judge "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1), and "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation," Fed. R. Civ. P. 72, advisory committee note, 1983 Addition, Subdivision (b).

**II. Discussion**

**A. Background**

The movant was indicted by a federal grand jury for one count of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and for one count of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2.

2

A trial was held from May 4, 2015 through May 6, 2015. The Eleventh Circuit Court of Appeals summarized the evidence as follows:

> In early January 2013, agents from the Drug Enforcement Agency ("DEA") began a wiretap investigation of a suspected cocaine trafficker, Jonathan Crutcher. On January 15, 2013, agents intercepted a call between Crutcher and another male, later identified as Curtis Jones, in which Jones advised Crutcher he had just received some drugs. Agents intercepted another call between Crutcher and Jones on January 29, 2013, in which they arranged for a drug transaction to take place later that day. The agents established surveillance on Crutcher and observed him meeting with Jones in a convenience-store-parking lot. After he met with Crutcher, the agents followed Jones to a residence located at 3964 Stonewall Tell Road in Atlanta, Georgia, and observed a number of vehicles coming and going from that residence over the course of the afternoon, including Crutcher's vehicle and a red Dodge Ram.
>
> Based on several intercepted calls between Jones and Crutcher during that time period, the agents learned Crutcher had turned over a large sum of money to Jones. In turn, Jones provided the drug proceeds to his source of supply, whom agents believed was driving the Dodge Ram. When the Dodge Ram left the Stonewall Tell Road residence, agents directed a local police officer to conduct a traffic stop of the vehicle. Three large bags of money were recovered from the vehicle, containing $614,811 in cash. The following day, January 30, 2013, agents intercepted a call between Jones and Crutcher in which Crutcher asked Jones for another four or five kilograms of cocaine. Following that call, the agents sought and obtained a wiretap for Jones's phone.
>
> On February 16, 2013, agents intercepted a call between Jones and an unidentified male, in which they discussed a future drug transaction. Two days later, on February 18, 2013, agents intercepted several calls between Jones and a person identified as

"Dee," which led them to believe the planned drug transaction would take place that day. The agents established surveillance on Jones at 2170 High View Road in Atlanta. Agents observed a number of vehicles coming and going from the High View Road residence, including a blue Chrysler Pacifica and a gray Nissan Maxima. When the Pacifica left the High View Road residence, the agents directed local law-enforcement officers to conduct a traffic stop of the vehicle. The officers recovered a one-kilogram package of powder cocaine and a bag containing crack cocaine in the backseat of the vehicle. The agents likewise directed local law enforcement to conduct a traffic stop of the Maxima, when it left the High View Road residence. The officers recovered two kilograms of cocaine under the hood of the vehicle and eight kilograms of cocaine from trap compartments under the floorboards.

Following the conclusion of the wiretap investigation, DEA agents conducted a "takedown," in which they simultaneously arrested the various individuals involved in the investigation. R. at 1038. The takedown took place on January 15, 2014; DEA Special Agent Michael Connolly, the co-case agent for the investigation, was assigned arresting Jones. Special Agent Connolly arrested Jones at a Hampton Inn in East Point, Georgia. He subsequently took Jones to 515 Platoro Court, Jones's residence, because Special Agent Connolly had a seizure warrant for Jones's BMW, which was located at that address. When they arrived at Platoro Court, Special Agent Connolly advised Jones of his Miranda1 rights. Jones waived his rights and gave Special Agent Connolly consent to search his Platoro Court residence.

In the family room of the residence, the agents found a home-security-system monitor, a loaded firearm, and extra magazine under the couch cushions. In one of the kitchen cabinets, the agents found a money counter. They also recovered a number of plastic baggies from the residence. In the master bedroom, agents found another security-system monitor, a collection of watches,

and a collection of sneakers that Jones stated was worth approximately $10,000.

Jones told Special Agent Connolly he lived at Platoro Court, and a barber and his son also had stayed there. When asked whether there were any firearms in the house, Jones stated the barber may have left a gun in the house. When Special Agent Connolly asked Jones about his involvement in narcotics trafficking, Jones admitted he was a marijuana trafficker. Jones initially denied any involvement in cocaine trafficking but later stated he could get five to ten kilograms of cocaine from "the Mexicans." R. at 1064.

Special Agent Connolly asked Jones about a house located at 1980 Childress Drive, which Jones had stated he owned. Special Agent Connolly requested permission to search that residence; Jones gave his consent. After the search at Platoro Court concluded, Special Agent Connolly drove Jones to the Childress Drive residence. On the ride there, Special Agent Connolly asked Jones whether he had a large stash of money somewhere; Jones admitted there was approximately $250,000 in the trunk of his BMW. Agents later searched the BMW and found three bags in the trunk of the car containing a total of $274,668 in cash.

At Childress Drive, Special Agent Connolly observed a security-system monitor in the living room of the residence. In the kitchen, agents discovered marijuana in the oven and in a hidden compartment behind the kick plate on the cabinets. They also found a scale in one of the cabinets and a firearm on top of one of the cabinets. In a kitchen drawer, Special Agent Connolly found a money ledger of the type commonly seen in drug-trafficking cases.

*United States v. Jones*, 657 F. App'x 938, 939–41 (11th Cir. 2016).

The jury convicted the movant of both counts against him. On September 16, 2015, this court sentenced the movant to 180 months imprisonment. After the movant filed a timely notice of appeal, the Eleventh Circuit affirmed his convictions and sentences by order dated September 21, 2016. *Jones*, 657 F. App'x at 938.

**B. Section 2255 Motion**

The movant collaterally challenged his convictions and sentences by filing a pro se § 2255 motion to vacate alleging eight claims of ineffective assistance of trial counsel and one claim of ineffective assistance of sentencing counsel [Doc. No. 156]. Finding an evidentiary hearing to be necessary, the court appointed counsel, Giles Jones, to represent the movant. The magistrate judge required the movant's counsel to file an amended § 2255 motion to properly identify issues he intended to pursue. The amended motion was filed on January 22, 2018 [Doc. No. 181] and focused on the movant's claim that he would have entered a guilty plea if his trial counsel had properly informed him of the strength of the government's case and benefits of pleading guilty.

The movant stated his dissatisfaction with Attorney Giles Jones's services and intention to retain new counsel. The court allowed the movant,

with new counsel of record, to file another amended § 2255 motion. The amended motion was filed by Attorney Rodney Zell on April 6, 2018 raising two specific grounds of ineffective trial counsel and one claim alleging violation of due process on the part of the government [Doc. No. 189]. Attorney Zell then filed a supporting brief clarifying that the movant is proceeding only on his claim of ineffective assistance of trial counsel for failing to properly advise the movant regarding the strengths of the government's case and lack of a cognizable defense [Doc. No. 192].

Again, the movant alerted the court to his disagreement with his attorney. Specifically, the movant stated that he objected to Attorney Zell's decision to abandon his claim of ineffective assistance of trial counsel based on the failure to move to suppress the wiretaps of the movant's phone. The movant requested that the court appoint new counsel to represent him. The court denied the request [Doc. No. 198].

At the evidentiary hearing, the movant's counsel questioned trial counsel regarding his advice to the movant about the risks of trial and benefits of pleading guilty. Additionally, the court permitted counsel to ask questions as to trial counsel's review and analysis of the wiretap paperwork

and tactical decisions regarding whether to file any motions to suppress the wiretap evidence.

After the hearing, the movant replaced Attorney Zell with another retained attorney, Stephen Reba. Attorney Reba filed a post-hearing brief in which he acknowledged that the only claim before the court was the ineffective assistance claim with respect to plea negotiations [Doc. No. 207]. But, Attorney Reba requested the court to allow the movant another opportunity to amend the motion and to conduct another evidentiary hearing.

In the R&R, the magistrate judge recommended denial of the movant's ineffective assistance claim citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Specifically, the magistrate judge found that the movant failed to show that (1) counsel's representation was deficient and (2) he suffered prejudice.

The movant makes no objection to this recommendation. This court finds no error and agrees with the magistrate judge's analysis.

**C. Wiretap Applications**

In addition to the ineffective assistance of counsel claim that was properly before the court, the magistrate judge addressed the movant's requests to examine the wiretap applications and supporting affidavits.

Apparently, more than 17 months after his initial § 2255 motion to vacate, and after he had terminated the services of appointed counsel and retained counsel to represent him on the § 2255 proceedings, the movant sought to resurrect claims of ineffective assistance of counsel related to the propriety of the wiretaps that were introduced as evidence at trial [Doc. No. 199]. In order to develop these claims, after the court's evidentiary hearing on the § 2255 motion, the movant, through his newly retained counsel, asked to see the applications and warrants underlying his wiretaps for the first time and to allow him to pursue, through counsel, the claims associated with those wiretaps [Doc. No. 207]. The magistrate judge correctly found that these efforts are untimely.

In his objections, filed by his newly retained counsel, the movant argues that the R&R "erroneously denies defendant his final chance to pursue his sole desired claim" [Doc. No. 212 at 1]. The movant requests that he be granted leave to amend his § 2255 petition and afforded an additional evidentiary hearing regarding his claims about the wiretap applications. The crux of the argument offered in the objection is that trial counsel could not have reviewed the wiretap applications and authorizations because they are not in his case file.

The theory offered by the movant in his objections is nothing more than speculation. Moreover, as determined by the magistrate judge, the movant's continued disagreement with counsel, particularly the retained counsel of his choice, about what § 2255 claims to pursue does not time and time again extend time for amending the § 2255 claims. The magistrate judge afforded the movant nearly two years to finalize his § 2255 claims. Also, the magistrate judge appointed counsel to represent the movant. When the movant became dissatisfied with his appointed counsel, the magistrate judge afforded his retained attorney additional time to file an amended § 2255 motion and rescheduled the evidentiary hearing. Yet, in his objections, the movant contends that the magistrate judge's R&R "eviscerate[s] any autonomous will of the individual whose liberty is restrained." These objections [Doc. No. 212] are wholly without merit and are OVERRULED.

### D. Certificate of Appealability ("COA")

Section 2253 sets forth the standard a movant must satisfy to obtain appellate review of this court's disposition of her § 2255 motion to vacate:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from -

> (A) the final order in a habeas corpus proceeding which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c)(1-3). This standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations omitted). The magistrate judge found that it is not reasonably debatable that the movant's claims lack merit and that he has not shown that he was denied a constitutional right.

The movant has not objected to the magistrate judge's recommendation that he is not entitled to a COA. This court agrees with the analysis of the magistrate judge. Accordingly, the movant is denied a COA. The movant may request a circuit judge to issue a COA since this court has denied the same. Fed. R. App. P. 22 (b)(1, 2). "Under the plain language of the rule, an

applicant for the writ gets two bites at the appeal certificate apple: one before the district judge, and if that one is unsuccessful, he gets a second one before a circuit judge." *Jones v. United States*, 224 F.3d 1251, 1255 (11th Cir. 2000) (quoting *Hunter v. United States*, 101 F.3d 1565, 1575 (11th Cir. 1996)).

### III. Conclusion

Based on the foregoing, the movant's objections [Doc. No. 212] are OVERRULED, and the magistrate judge's R&R [Doc. 210] is ADOPTED as the order of the court.

IT IS ORDERED that the motion to vacate [Doc. 156] is DENIED, and that a COA is DENIED.

The clerk is DIRECTED to close the civil action associated with the filing of the motion to vacate.

SO ORDERED, this 7th day of June, 2019.

/s/CHARLES A. PANNELL, JR.
CHARLES A. PANNELL, JR.
United States District Judge